These views lead to an affirmance of the order of the General Term.

The order should be affirmed, with costs.

All concur.

Order affirmed.

---

The People ex rel. Stephen L. Vanderveer, Appellant, *v.* Thomas A. Wilson et al., Respondents.

The act of 1885 (Chap. 411, Laws of 1885) providing that all lands in counties containing upwards of 300,000 inhabitants should be practically assessable as non-resident lands, and the act of 1886 (Chap. 316, Laws of 1886), amending the Revised Statutes by adding thereto a provision to the effect that occupied farms or lots lying in two or more towns shall be taxed in the town where the occupant resides, are not in conflict; the former makes the land, in a county having the requisite number of inhabitants, assessable as non-resident land, whether occupied or not, and the latter determines the town or ward entitled to the benefit of a tax upon a farm or lot divided by town, ward or county lines.

The terms "unoccupied" and "non-resident," as applied to lands, within the meaning of the tax laws, are not synonymous. Lands, although occupied, may be assessed as non-resident lands, while unoccupied lands may be assessed as resident.

*It seems*, that if the act of 1885 is in any respect inconsistent with, or tends to render the act of 1886 inoperative, it is repealed by the latter act.

Where, therefore, a farm in the county of Kings, lying in a compact and connected form, partly in the city of Brooklyn and partly in adjoining towns, was occupied and the occupant lived on that portion lying in the city, *held*, that the whole farm was properly assessed in the city.

(Submitted January 12, 1891; decided January 20, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 20, 1889, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This was a proceeding by certiorari to review the acts of defendants, as assessors of the city of Brooklyn, in assessing certain lands belonging to the relator.

The facts, so far as material, are stated in the opinion.

*John H. Kemble* for appellant.    By the repeal of the amendatory act of 1871, the city of Brooklyn is without power to assess lands outside of its limits. (*People* v. *C. Bank*, 67 N. Y. 109–116 ; *Harris* v. *Bd. of Suprs.*, 33 Hun, 279–282 ; *McMillian* v. *Bellows*, 37 id. 214 ; *Hampton* v. *Hamsher*, 46 id. 144 ; *In re Miller*, 110 N. Y. 216–222.)  Chapter 411 of the Laws of 1885, applies to the towns in Kings county. (2 R. S. 989–1007, chap. 13, § 11.)    The respondents' claim that chapter 315 of the Laws of 1886, authorizes the assessment in question, is error, as this chapter should not be construed as repealing chapter 411 of the Laws of 1885. ( *Whipple* v. *Christian*, 80 N. Y. 523 ; *McKenna* v. *Edmundstone*, 91 id. 231 ; *Graf* v. *Cunningham*, 109 id. 369.)    The board of assessors of the city of Brooklyn had no authority to assess the relator's land, situated in the towns of Flatbush and Flatlands. (Laws of 1886, chap. 355 ; Laws of 1868, chap. 635, § 3.)

*Almet F. Jenks* for respondents.    The Twenty-sixth ward of the city of Brooklyn is a town of the county of Kings. (Laws of 1888, chap. 583, § 28.)    The land is properly assessed in the city of Brooklyn.    (Laws of 1886, chap. 315.)

RUGER, Ch. J.    This case arises upon the following facts : Previous to the year 1886 the relator was the owner of a farm in Kings county containing 109 acres of land, lying in a compact form in the several adjoining towns of New Lots, Flatlands and Flatbush, of which about thirty acres lay in the town of New Lots.    In that year the town of New Lots was, by chapter 335 of the laws of that session, annexed to and made a part of the city of Brooklyn, and constituted its Twenty-sixth ward.    The farm was occupied by the relator, and he resided on that part lying in the former town of New Lots, and the question relates to the place where it is assessable.    The only provision in said act affecting the taxability of real estate is the following : "For the purposes of taxation the real estate included in the territory hereby annexed shall be assessed at the value of the land for agricul-

tural purposes." This affected only the rate of assessment. The assessors of Brooklyn, in the year 1888, assessed the whole farm in that city, and this proceeding was instituted to review such assessment; the relator claiming that such assessors had no authority to assess that portion of the farm lying outside of the limits of the city. The courts below have held that the whole farm was assessable in Brooklyn, and it is conceded by the relator's counsel that unless chapter 316 of the Laws of 1886 repeals, amends or controls chapter 411 of the act of 1885 the order is correct.

We are of the opinion that chapter 316 furnishes the correct rule on the subject, and if the law of 1885 is in any respect inconsistent with, or tends to render the act of 1886 inoperative, it is repealed by that act.

By the law of 1886, article 1, title 2, chapter 13, part 1 of the Revised Statutes was amended by adding thereto this section: " Sec. 4. When the line between two towns, wards or counties divides a farm or lot, the same shall be taxed, if occupied, in the town, ward or county where the occupant resides. If unoccupied, each part shall be assessed in the town, ward, village or county where the same shall lie." " Sec. 2. All acts or parts of acts inconsistent with this act are hereby repealed."

This is the latest act on the subject, and must necessarily control all prior acts inconsistent therewith

The relator attempts to support this appeal by claiming that there is an inconsistency in the system of assessment provided by the respective laws of 1885 and 1886, and that the act of 1886 ought not to be construed to repeal any part of the act of 1885. The argument, so far as we understand it, is, that there is no distinction between the phrases " non-resident" and "unoccupied lands," as used in the statute, and, inasmuch as the act of 1885 has made a special rule and abolished the distinction between resident and non-resident lands in counties having over 300,000 inhabitants, that the act of 1886 was not intended to affect the rule of assessment applicable to such counties.

We are quite unable to see any conflict between these acts. The act of 1885 substantially provided that all lands in counties of a certain size should be practically assessable as non-resident lands, and the act of 1886 provided that occupied farms or lots lying in two or more towns, wherever situated, should be assessable in the town where the owner resided. Both acts can be enforced with unrestricted operation. The act of 1885 makes the land assessable as non-resident land, whether occupied or not, and that of 1886 makes it assessable, if occupied, in the city or town where the occupant resides, and both laws have a legitimate and consistent operation. The one determines the particular ward or town which is entitled to the benefit of the taxes from the particular farm or lot, and the other the mode governing the collection of the tax after levy.

The taxes on this land, whether assessed in one town or another, would be collected in the same way, because each town lies in a county having the requisite population to make its taxes collectable as upon non-resident lands, and the mode of collection will be the same wherever it is assessed.

Our views are confirmed by a consideration of the essential distinctions existing between the terms "unoccupied" and "non-resident" lands, as used in popular phraseology. There is not only an essential distinction between them, but the statutes relating to assessment and taxation have uniformly recognized this difference. This very clearly appears by the first four sections of article 1, title 2, chapter 13, part 1 of the Revised Statutes (p. 989, 7th ed.), reading as follows: Sec. 1. "Every person shall be assessed in the town or ward where he resides when the assessment is made, for all lands then owned by him within such town or ward, and occupied by him or wholly unoccupied." Sec. 2. "Lands occupied by a person other than the owner, may be assessed to the occupant, as lands of non-residents, or if the owner resides in the county in which such lands are located to such owner." This was amended by chapter 152 of the Laws of 1878, to read as above. Sec. 3. "Unoccupied lands not owned by a person residing in the ward or town where the same are situated shall be denomi-

nated 'lands of non-residents.'"   Sec. 4.  "Where the line between two towns or wards divides a farm or lot, the same shall be taxed, if occupied, in the town or ward where the occupant resides; if unoccupied, each part shall be assessed in the town in which the same shall lie, and this, whether such division line be a town line only, or be also a county line." This section was slightly amended by chapter 287 of the Laws of 1871, and that law was repealed by chapter 355 of the Laws of 1872, thus leaving the act in question without a section 4, until the act of 1886 substantially restored the original law of 1871.  Chapter 427, Laws of 1855, as amended by chapter 101, Laws of 1876, provides for the collection of taxes on lands assessed to a resident which are returned as unpaid on account of the premises becoming vacant by the removal of an occupant, by authorizing the reassessment of the same in the subsequent year as non-resident lands.  It is apparent from these provisions that the lands may be occupied by an owner and assessed as non-resident lands, although occupied and cultivated.  Non-resident lands may be occupied or not occupied, according to circumstances, while occupied lands may belong to non-resident owners and yet be assessable as resident lands in the several towns wherein they lie.  It is clear, therefore, that when a statute speaks of unoccupied lands we have no warrant for supposing it was intended to include all non-resident lands, and neither does the term non-resident lands necessarily include the subject of unoccupied lands.

With this understanding the statutes governing the disposition of this case are clear and consistent.  The act of 1885 does not assume to lay down any rule as to the place of assessment of occupied lands divided by town, ward or county lines, and the act of 1886 does, in express terms, lay down the rule governing that subject, and its language is broad and unrestricted.

We think the order of the court below is right and should be affirmed.

All concur.

Order affirmed.